## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  05-34045

SAMUEL RICHARD COURTNEY
d/b/a COURTNEY BUILDERS

                Debtor

        MIMS GORDON and
        ALTA MARIE WILLIAMS

                Plaintiffs

            v.                      Adv. Proc. No.  05-3186

        SAMUEL RICHARD COURTNEY

                Defendant

## M E M O R A N D U M

**APPEARANCES:**   HODGES, DOUGHTY & CARSON, PLLC
                    Keith L. Edmiston, Esq.
                    Post Office Box 869
                    Knoxville, Tennessee  37901-0869
                    Attorneys for Plaintiffs

                    MOSTOLLER, STULBERG & WHITFIELD
                    Ann Mostoller, Esq.
                    136 South Illinois Avenue
                    Suite 104
                    Oak Ridge, Tennessee  37830
                    Attorney for Defendant/Debtor

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint Objecting to Discharge of the Debtor, to Determine the Dischargeability of a Debt, and for Damages (Complaint) filed by the Plaintiffs on October 27, 2005, asking the court to (1) deny the Debtor's discharge under 11 U.S.C.A. § 727(a)(2), (3), (4)(A), (4)(D), and (5) (West 2004); (2) determine the nondischargeability of a debt under 11 U.S.C.A. § 523(a)(2), (4), and (6) (West 2004); (3) award compensatory damages in the amount of no less than $250,000.00 for negligence, intentional misrepresentation, fraud, outrageous conduct, deceit, conversion, breach of contract, and violations of the Tennessee Consumer Protection Act for actions with respect to a contract between the parties for the construction of a house, plus treble damages, punitive damages, and attorneys' fees; and (4) if the Debtor is denied a discharge, allow the Plaintiffs' attorneys' fees as an administrative expense under 11 U.S.C.A. § 503(b)(3) and (4) (West 2004).[1]

The trial of this adversary proceeding was held on August 29, 2006.[2]  The record before the court consists of eight exhibits introduced into evidence, along with the testimony of three witnesses, G. Wayne Walls, the Chapter 7 Trustee, Amy Lee Courtney, and the Debtor.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(I) and (J) (West 1993).

---

[1] The Complaint also contained a jury demand, which was stricken by the court's Order entered on February 23, 2006, because the Plaintiffs waived their right to a jury trial by filing a proof of claim in the Debtor's bankruptcy case.

[2] Pursuant to the Pretrial Order, entered on April 7, 2006, only the § 727(a) objection to discharge issues were tried, as the court, with the agreement of the parties, bifurcated the Plaintiffs' objection to discharge from their request for a determination of the dischargeability of a debt.  The parties also agreed that the court is not called upon to determine the Plaintiffs' damages, if any, within the context of the § 727 action and that if the objection to discharge is sustained, the denial of the Debtor's discharge will be fully dispositive of the present adversary proceeding.  The other issues will then be litigated in state court proceedings that were pending at the commencement of the Debtor's bankruptcy case.

# I

On June 7, 2002, the Plaintiffs entered into a contract with the Debtor, doing business as Courtney Builders, for the construction of a house on the Plaintiffs' property in Norris, Tennessee, for a purchase price of $189,762.00, to be paid in four equal installments at different stages of the construction's progress.  The Debtor received funds pursuant to the contract in multiple installments.  These funds received from the Plaintiffs were co-mingled with funds for other projects.  Under the terms of the parties' contract, construction of the house was to be completed by December 3, 2002, but as of March 2003, the project was not completed, and the Plaintiffs filed suit against the Debtor in the Circuit Court for Anderson County, Tennessee.

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on July 26, 2005.  The Plaintiffs filed the Complaint initiating this adversary proceeding on October 27, 2005, averring, with respect to their objection to his discharge, that the Debtor transferred money out of his business account for use by himself and his spouse improperly, that he has not kept books and records concerning his financial affairs, that he failed to disclose all of his assets and liabilities and fraudulently made false statements in his bankruptcy statements and schedules, that he has failed to comply with the Chapter 7 trustee's requests for documentation, and that he has failed to satisfactorily explain how he spent the money fraudulently received from his business accounts, including the Plaintiffs' construction funds.

## II

Chapter 7 debtors receive a general discharge of all pre-petition debts under 11 U.S.C.A.

§ 727, unless one of ten express limitations exists.[3]  Section 727 provides, in material part:

(a)  The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; . . .

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowing and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . . .

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs; [or]

---

[3] A Chapter 7 discharge relieves "honest but unfortunate" debtors of their debts and allows them a "fresh start" through this discharge.  *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt,* 54 S. Ct. 695, 699 (1934)).

. . . .

    (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

. . . .

    (b)  Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]

11 U.S.C.A. § 727(a).  These limitations furnish creditors with "a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge." *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987) (quoting *Harman v. Brown* (*In re Brown*), 56 B.R. 63, 66 (Bankr. D.N.H. 1985)).  Section 727(a) is liberally construed in favor of the debtor, and the party objecting to discharge bears the burden of proof by a preponderance of the evidence.  *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994); Fed. R. Bankr. P. 4005.

## A

    The Plaintiffs first object to the Debtor's discharge under § 727(a)(2)(A), which requires proof by the Plaintiffs of two elements:  (1) the disposition of property, including transfer or concealment by the Debtor, within one year of filing his bankruptcy petition, and (2) the Debtor's subjective intent to hinder, delay, or defraud creditors by disposing of his property.  *Keeney*, 227 F.3d at 683-84 (citing *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)); *see also Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999) (stating that a plaintiff

need not prove the debtor intended to hinder, delay, and defraud creditors, since proof of any one

satisfies § 727(a)(2)(A)).

Section 727(a)(2)(A) requires proof of actual fraudulent intent, as constructive fraud will not

suffice. *E. Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga.

2004). Accordingly, in order to prevail under this subsection, the Plaintiffs must prove that the

Debtor possessed an actual intent to deceive; however, because of the inherent difficulties in proving

intent, they may use circumstantial evidence, including evidence of the Debtor's conduct, to establish

his intent. *Buckeye Retirement Co., L.L.C. v. Heil (In re Heil)*, 289 B.R. 897, 907 (Bankr. E.D. Tenn.

2003) (citing *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998)). Harm

suffered by the Plaintiffs is irrelevant for the purposes of § 727(a)(2)(A). *Clean Cut Tree Serv., Inc.

v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003) (citing *Peterson v. Scott (In

re Scott)*, 172 F.3d 959, 968 (7th Cir. 1999)).

In order to determine actual intent, based upon circumstantial evidence, many courts consider

the following "badges of fraud":

> (i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or
> close relationship between the parties; (iii) the retention of possession, benefit, or use
> of the property in question by the debtor; (iv) the financial condition of the party
> sought to be charged prior to and after the transaction in question; (v) the conveyance
> of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence
> or cumulative effect of a pattern or series of transactions or course of conduct after
> incurring of debt, onset of financial difficulties, or pendency or threat of suit by
> creditors; and (viii) the general chronology of events and transactions under inquiry.

6

*Matus*, 303 B.R. at 672-73; *see also Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718, 723 (Bankr.

E.D. Mich. 2003); *Nashville City Bank & Trust Co. v. Peery (In re Peery)*, 40 B.R. 811, 815 (Bankr.

M.D. Tenn. 1984).  Additional factors indicating a debtor's actual intent include

> whether the transaction is conducted at arm's length; whether the debtor is aware of
> the existence of a significant judgment or over-due debt; whether a creditor is in hot
> pursuit of its judgment or claim and whether the debtor knows this; and the timing
> of the transfer relative to the filing of the petition.

*Adamson v. Bernier (In re Bernier)*, 282 B.R. 773, 781 (Bankr. D. Del. 2002).  If the plaintiff

establishes the existence of badges of fraud, the burden shifts to the debtor to rebut the presumption.

*Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002); *see also Peery*, 40 B.R. at 815

n.6.  Moreover, "[j]ust one wrongful act may be sufficient to show actual intent . . . [although] a

continuing pattern of wrongful behavior is a stronger indication [thereof]." *Sowers*, 229 B.R. at 157.

The Plaintiffs contend that the following pre-petition transfers made by the Debtor justify

denial of his discharge under § 727(a)(2)(A):  (1) on January 31, 2005, the Debtor transferred, by

quitclaim deed, residential real property titled in his individual name known as 404 Alpine Drive,

Clinton, Tennessee (Alpine Drive Property) to himself and his wife as tenants thereby creating a

tenancy by the entireties; (2) in February 2005, the Debtor and Mrs. Courtney refinanced the Drive

Property; (3) during the six months immediately preceding his bankruptcy filing, the Debtor wrote

thirty-four checks totaling $23,489.00 to himself and his wife from his business account, without

consideration; and (4) in May 2005, the Debtor transferred a 1995 Pontiac Firebird (Firebird) to

Clowers Electric in exchange for forgiveness of the $1,500.00 outstanding balance owed to it, along

with a $2,000.00 credit that the Debtor has not yet used.

7

Based upon the evidence presented, the court finds that the Plaintiffs have met their burden of proof that the Debtor transferred property with the requisite fraudulent intent for justifying denial of his discharge under § 727(a)(2)(A). At trial, the Debtor acknowledged making these transfers but denied concealing any of them with an intent to hinder, delay, defraud, or deceive his creditors. With respect to the transfer of the Alpine Drive Property, the Debtor testified that he originally built the home as a spec house, so it was titled solely in his name, doing business as Courtney Builders. However, when he was unable to sell the house, and his family decided to live there, he executed the Quit Claim Deed so that he and Mrs. Courtney would own the Alpine Drive Property as tenants by the entireties.[4] *See* TRIAL EX. 6. In support of his decision to quit claim the Alpine Drive Property to Mrs. Courtney, the Debtor also testified that she was routinely present at closings for houses that he sold and that she was usually on the deeds therefor because the banks wanted it that way. On the other hand, the Debtor also testified that he was aware that a Chapter 7 trustee would not want properties that were owned as tenants by the entireties.

Similarly, with respect to refinancing the Alpine Drive Property, the Debtor testified that they refinanced the house in order to convert the loan from a construction mortgage to a regular mortgage and in order to pay trade debts from the equity in the property. As evidenced by the Note, Disclosure, and Security Agreement dated January 31, 2005, the Courtneys received $44,799.55 at closing. TRIAL EX. 5. The Debtor testified that he used the proceeds to catch up on trade debts owed from construction of the Alpine Drive Property and to avoid the possibility of any materialman's

---

[4] Mr. Walls testified that he, in his capacity as Chapter 7 Trustee, filed an adversary proceeding against Mrs. Courtney to set aside the conveyance, but that Mrs. Courtney did not respond or otherwise appear, and instead, she allowed a default judgment to be entered against her.

8

liens being placed against the property.  The Debtor did not, however, disclose the refinancing of the Alpine Drive Property to the Chapter 7 Trustee until after he gave testimony about it in a June 2006 deposition.

As for the $23,489.00 paid from the Debtor's business to himself and his wife prior to filing bankruptcy, the Debtor testified that he considered that money his payroll and that he sometimes wrote checks to Mrs. Courtney because she paid the bills.  In her testimony, Mrs. Courtney confirmed that this was the Debtor's practice long before he filed for bankruptcy.  Both the Debtor and Mrs. Courtney testified that they used the majority of those funds to pay household expenses, including their house payment, groceries, fuel, and medications, in addition to paying some of the Debtor's business expenses such as monthly payments on his Bobcat that he originally planned to reaffirm.  Mr. Walls also testified that he has matched up a majority of the $23,489.00 in question with the Courtneys' bank statements, and that the Debtor's figures concerning his approximate income for the year listed in his Statement of Financial Affairs is consistent with the amounts paid from the business account to the Courtneys' personal account.  The Plaintiffs did not offer anything into evidence to rebut this cumulative testimony that the $23,489.00 paid to the Courtneys from the Debtor's business were used to pay necessary living expenses, with no evidence of fraudulent intent.

Finally, with respect to the Firebird, the Debtor testified that he owed $1,500.00 to Clowers Electric, so he entered into a gentleman's agreement with Clowers and without supporting documentation, whereby he transferred the Firebird in exchange for payment of the $1,500.00 debt and a credit of $2,000.00.  When questioned as to his intention to file bankruptcy at the time of the transfer in May 2005, the Debtor stated that he could not recall if he was planning on filing then.

9

The Debtor also testified that he did not think to disclose it to the Chapter 7 Trustee as a transfer because no actually money changed hands.

Although the evidence does not support the Plaintiffs' allegations of fraud with respect to the $23,489.00 paid from the Debtor's business to the Debtor and Mrs. Courtney, the same cannot be said for the other three transfers. The record before the court establishes the Plaintiffs' contention that the Debtor transferred the Alpine Drive Property to Mrs. Courtney creating a tenancy by the entireties, refinanced the Alpine Drive Property and paid the $44,799.55 in surplus proceeds to various trade vendors, and transferred the Firebird to Clowers Electric in exchange for credit with the intent to hinder, delay, defraud, or deceive his creditors and/or the Chapter 7 Trustee.

In his statements and schedules filed on July 26, 2005, the Debtor assigned the Alpine Drive Property a fair market value of $265,00.00, subject to a mortgage in the amount of $211,000.00. The Debtor executed the Quit Claim Deed on January 31, 2005, transferring the Alpine Drive Property from himself, doing business as Courtney Builders, to himself and Mrs. Courtney as tenants by the entireties for consideration of $1.00. On the face of the Quit Claim Deed, there are several badges of fraud. First, there is the lack of consideration for the transfer. Second, the Debtor transferred the Alpine Drive Property to himself and his wife. Third, the Debtor retained the possession, benefit, and use of the Alpine Drive Property. Fourth, the Debtor testified that he was unable to pay his trade debt owed on the Alpine Drive Property when he refinanced the construction loan, which also occurred on January 31, 2005. Fifth, the Debtor did not initially disclose the refinancing and resulting transfer in his Statement of Financial Affairs. And sixth, the Debtor testified that he was aware the Trustee would not want property owned as tenants by the entireties.

10

The transfer to Mrs. Courtney, which was not disclosed initially in the Debtor's statements and schedules, imposed a tenancy by the entireties upon the Alpine Drive Property, whereby the only interests that entered the Debtor's bankruptcy estate were his present possessory interest and his right of survivorship. *See In re Arwood*, 289 B.R. 889, 893 (Bankr. E.D. Tenn. 2003). But for the transfer and pre-petition creation of a tenancy by the entireties, the Alpine Drive Property would have entered the Debtor's bankruptcy estate subject only to the mortgage lien, leaving a potential $54,000.00 in equity for the benefit of the estate. The fact that the Debtor acknowledged his understanding that the Chapter 7 Trustee would not want to bother with property owned as tenants by the entireties satisfies the court that the Debtor was aware of the nature of the property rights that would be passed into his bankruptcy estate. The record further establishes that the Debtor, a builder, was well acquainted with the distinction between real property owned in fee simple and by the entireties.

Likewise, with respect to the Debtor's refinancing the Alpine Drive Property, the Debtor's actions evidence an intent to hinder at least some of his creditors. The Debtor and Mrs. Courtney obtained a loan from The Community Bank of East Tennessee on January 31, 2005, in the principal amount of $212,000.00, which included $167,200.45 necessary to pay off the prior mortgage and $440.00 for prepaid finance charges, leaving net proceeds of $44,799.55, which were paid directly to the Courtneys. The Debtor testified that he was aware of the possibility that materialman's liens could be recorded against the property and that he then used those proceeds to pay trade debt associated with the construction of the Alpine Drive Property, including almost $8,000.00 to American Express for materials used on the house. He also testified that he had no knowledge that

11

a bankruptcy trustee could get any equity on the property. Additionally, the Debtor testified that he knew in the spring of 2005 that he could no longer pay his debts, and he consulted an attorney.

In light of the Debtor's testimony concerning his knowledge that a bankruptcy trustee would not be interested in property owned as tenants by the entireties, it is unlikely that the Debtor would not also realize that a bankruptcy trustee would be entitled to recoup any equity in real property for the benefit of a bankruptcy estate. By taking the $44,799.55 out of the Alpine Drive Property, the Debtor significantly reduced the amount of equity therein. Furthermore, by taking the proceeds for the payment of various debts attributable to the Alpine Drive Property, the Debtor favored the trade creditors connected with his residence over other creditors, to their detriment. It is also telling that the Debtor did not disclose the refinancing of the Alpine Drive Property in his statements and schedules, nor did he inform the Chapter 7 Trustee that he received proceeds therefrom in the amount of $44,799.55 any time during his meeting of creditors or thereafter. It was only after a deposition taken in June 2006, that the Trustee was informed of these facts.

Finally, the Debtor's transfer, in May 2005, of the Firebird in satisfaction of the $1,500.00 debt owed to Clowers Electric, along with a credit in the amount of $2,000.00, also evidences an intent to hinder or deceive creditors and/or the Chapter 7 Trustee. The Debtor once again failed to disclose this transfer in his statements and schedules, nor did he communicate in any way the transfer to the Trustee, and it was only after he mentioned it in a June 2006 deposition that the Trustee learned of it. The transfer effectively precluded other creditors and/or the bankruptcy estate from obtaining the benefit of the value of the Firebird, and it is irrelevant of the amount deprived.

12

The focus falls upon the Debtor's actions, and collectively, the court concludes that the Debtor possessed the necessary fraudulent intent not only in making the three transfers concerning the Alpine Drive Property and the Firebird, but also in his concealment of the refinance and the Firebird transfer for almost a year after he filed his bankruptcy case. Even construing § 727(a)(2)(A) strictly in favor of the Debtor, based upon the evidence presented, the court finds that the Plaintiffs have met their burden of proof, and the Debtor's discharge shall be denied under § 727(a)(2)(A).

**B**

The Plaintiffs have also objected to the Debtor's discharge under § 727(a)(3) for failing to produce documentation "with enough information to ascertain [his] financial condition and track [his] financial dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997) (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (citations omitted)). This disclosure provides the trustee and creditors with sufficient information concerning the Debtor's financial history and current financial affairs, because "[c]reditors are not required to risk having the debtor withhold or conceal assets 'under the cover of a chaotic or incomplete set of books or records.'" *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) (quoting *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir. 1990)).

Accordingly, the Plaintiffs are not required to investigate and acquire the Debtor's records, as it is the Debtor's responsibility to provide sufficient information. *See Wazeter*, 209 B.R. at 227-28. The Plaintiffs do, however, bear the initial burden of proof under § 727(a)(3) that the Debtor

13

"has failed to maintain adequate books and records and that such failure renders it impossible to discern [his] true financial condition[.]"  *Christy v. Kowalski (In re Kowalski)*, 316 B.R. 596, 601 (Bankr. E.D.N.Y. 2004).  If the Plaintiffs prove that the Debtor's records are inadequate, the burden shifts to the Debtor to prove that his failure to maintain records was justified under the specific circumstances of his case.  *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 883 (B.A.P. 6th Cir. 1999).  Intent is not an element under § 727(a)(3).  *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002).

The adequacy of a debtor's records is determined on a case by case basis, *Strbac*, 235 B.R. at 882, and judges have broad discretion to deny discharge based on inadequately kept books and records.  *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986).

> The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.'  The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'"

*Alten*, 958 F.2d at 1230 (quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979) (citations omitted)). Instead, the Debtor's records should be measured "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience." *Wazeter*, 209 B.R. at 227 (quoting *Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr. N.D. Ohio 1997)).

Other factors focused on by courts include:

14

1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;

2. The amount of the debtor's obligations;

3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;

4. The debtor's education, business experience and sophistication;

5. The customary business practices for record keeping in the debtor's type of business;

6. The degree of accuracy disclosed by the debtor's existing books and records;

7. The extent of any egregious conduct on the debtor's part; and

8. The debtor's courtroom demeanor.

*Kowalski*, 316 B.R. at 602 (citing *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)).  Examples of inadequate disclosures include the failure to produce checking account statements, tax returns, household bills and/or credit card records, loan documentation, pay records, and real estate closing statements.  *See Ochs v. Nemes (In re Nemes)*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005) (credit card records and bank statements); *Strbac*, 235 B.R. at 884 (tax returns, paycheck stubs, and records with respect to the debtor's subcontractor work); *Wazeter*, 209 B.R. at 228 (cancelled checks for two years, loan records, closing records for real estate transactions, and household bills).

The Plaintiffs urge the court to deny the Debtor's discharge, based upon his failure to adequately maintain and produce any of his personal financial records, including records concerning a pre-petition refinance of the Alpine Drive Property, records concerning how he spent the Plaintiffs' construction funds, and records concerning how he and his spouse spent the $23,489.00 received in

15

the six months prior to filing for bankruptcy.  The Debtor, however, argues that he has provided all requested records to the Trustee.

Based upon the testimony of Mr. Walls, the Chapter 7 Trustee, the court finds that the Debtor has produced sufficient documentation to allow the Trustee and creditors to ascertain the Debtor's financial history.  At trial, Mr. Walls testified that the Debtor has supplied him with all requested bank records from the Debtor's business and the Courtneys' personal accounts, and the Debtor produced the deeds for all real property he owned at the time of filing.  The Trustee testified that the Debtor has not supplied him with documentation concerning the January 31, 2005 refinance of the Alpine Drive Property or the transfer of the Firebird to Clowers Electric, but he has not requested that documentation from the Debtor.  Nevertheless, the documentation that the Debtor has supplied is adequate to determine his true financial condition.  Because the Plaintiffs have not met their initial burden of proof, the inquiry ends.  The Debtor's discharge will not be denied pursuant to § 727(a)(3).

## C

The Plaintiffs also contend that the Debtor's discharge should be denied under § 727(a)(4)(A), which requires proof:  (1) that the Debtor made a statement under oath; (2) that was false; (3) he knew that the statement was false when he made it; (4) he fraudulently intended to make the statement; and (5) the statement materially related to the bankruptcy case.  11 U.S.C.A. § 727(a)(4)(A); *Keeney*, 227 F.3d at 685; *Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000).  Section 727(a)(4)(A) includes both affirmative false statements and omissions. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004).  Furthermore, statements

16

are material for the purposes of § 727(a)(4) if they "bear[] a relationship to the [debtor's] business transactions or estate, or concern[] the discovery of assets, business dealings, or the existence and disposition of property." *Keeney*, 227 F.3d at 686 (quoting *Beaubouef v. Beaubouef* (*In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)).

A debtor's statements and schedules are executed under oath and penalty of perjury. FED. R. BANKR. P. 1008; OFFICIAL FORM 1 (Voluntary Petition); OFFICIAL FORM 7 (Statement of Financial Affairs); *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999). Statements made by the Debtor at his meeting of creditors pursuant to 11 U.S.C.A. § 341 (West 2004) were made under oath. *See* 11 U.S.C.A. § 343 (West 2004) ("The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. . . ."); FED. R. BANKR. P. 2003(c). Similarly, testimony and statements given in a deposition or 2004 examination are under oath. *See, e.g., Brumley v. Wingard*, 269 F.3d 629, 642 (6th Cir. 2001).

Knowledge that a statement is false can be evidenced by a demonstration that the debtor "knew the truth, but nonetheless failed to give the information or gave contradictory information." *Hamo*, 233 B.R. at 725; *Sowers*, 229 B.R. at 158 (citing *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 584 (Bankr. E.D. Tenn. 1985)). Fraudulent intent "involves a material representation that [the debtor knows] to be false, or . . . an omission that [the debtor knows] will create an erroneous impression." *Keeney*, 227 F.3d at 685 (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). Reckless disregard or indifference for the truth also demonstrates fraudulent intent. *Keeney*, 227 F.3d at 686; *Beaubouef*, 966 F.2d at 178. Likewise, intent may be inferred from the Debtor's conduct, and a continuing pattern of omissions and/or false statements in his bankruptcy schedules exhibits reckless

17

indifference.  *Hamo*, 233 B.R. at 724-25; *Sowers*, 229 B.R. at 159.  On the other hand, courts do not

generally find that debtors who mistakenly or inadvertently give false information, and those who

amend their schedules and report omissions or misstatements prior to or during their meetings of

creditors possess the requisite fraudulent intent for denial of their discharge under § 727(a)(4)(A).

*Keeney*, 227 F.3d at 686; *Gold v. Guttman (In re Guttman)*, 237 B.R. 643, 647 (Bankr. E.D. Mich.

1999).

Here, the Plaintiffs ground their § 727(a)(4)(A) action on their contention that the Debtor

filed statements and schedules that were materially inaccurate and false when he (1) failed to disclose

the January 31, 2005 quitclaim deed transferring the Alpine Drive Property; (2) failed to disclose the

pre-petition refinance of the Alpine Drive Property at which he received more than $40,000.00 at

closing; (3) failed to identify a preferential transfer to Clowers Electric; (4) failed to disclose checks

totaling $15,069.00 written from the Debtor's business account payable to his wife; (5) misstated

that he owned real property located at 281 Black Oak Road, Clinton, Tennessee (Black Oak

Property), along with his wife when, in fact, he owns the real property individually, and his parents

reside there; and (6) failed to disclose a lump sum payment in the amount of $1,649.72 to CitiCapital

on July 14, 2005, only twelve days before filing his petition.  The Plaintiffs acknowledge that the

Debtor amended his Statement of Financial Affairs on July 21, 2006, to make certain disclosures,

but only after issues were raised by themselves and the Chapter 7 Trustee.

First, with respect to the checks written to Mrs. Courtney, the testimony of Mr. Walls, the

Debtor, and Mrs. Courtney sufficiently establish that these funds were used to maintain the Debtor's

household, and that he considered these funds his salary, despite the fact that they were written to

18

Mrs. Courtney.  Mrs. Courtney testified that she used the money to purchase groceries and the like, as well as to make their house payment.  This testimony is buttressed by Mr. Walls' testimony that he had matched most of the funds in question to the Courtneys' personal bank records.  The Debtor's failure to specifically list these payments separately from his income and expenses as reflected on Schedules I and J does not appear to have been made with an intent to deceive and is not sufficient to justify denial of his discharge.

Similarly, the Debtor's misstatement with respect to his ownership interest in the Black Oak Property appears to be purely accidental, and at the most, negligent.  As to the error, the Debtor testified that he thought that he and Mrs. Courtney owned the property as tenants by the entireties because she was listed on the loan documents for the Black Oak Property.  He acknowledged that he did not, however, review any of the deeds for his real properties prior to filing, since he just assumed that he and Mrs. Courtney owned them all as tenants by the entireties.  This testimony is credible, although it does not excuse the Debtor's failure to carefully review his documentation prior to filing his case.  Additionally, the Debtor testified that he advised the Chapter 7 Trustee, at his meeting of creditors, of the true nature of his ownership interest in the Black Oak Property, which Mr. Walls confirmed in his testimony.  The court also notes that the Debtor filed an Amended Schedule A on November 17, 2005, reflecting his correct ownership interest in the Black Oak Property.  Accordingly, the Debtor's misstatement with respect to the Black Oak Property does not reflect an intent to deceive or reckless indifference necessary to justify denial of his discharge.

The other deficiencies raised by the Plaintiffs do, however, reflect an intent to deceive, or at the very least, a reckless indifference that justifies denial of the Debtor's discharge under

19

§ 727(a)(4)(A).  First, with respect to the Debtor's failure to disclose the transfer of the Alpine Drive

Property to Mrs. Courtney via Quit Claim Deed on January 31, 2005, the Debtor testified that the

Chapter 7 Trustee was informed at the initial meeting of creditors that there were problems

concerning the scheduled properties, a fact that Mr. Walls confirmed.  The Debtor also argued that

he has since amended his statements and schedules to reflect the transfer.  Additionally, at trial, the

Debtor testified that he simply did not know that he was required to disclose it in his statements and

schedules because he was unaware that a quit claim deed was a transfer of property.  This testimony

is not credible, however, given that the Debtor, who testified that he has been in the construction

business and transferred many properties through sales thereof, also acknowledged that the Trustee

would not want to pursue property owned as tenants by the entireties.  The court notes that the

Debtor did file an amendment to his statements and schedules on July 21, 2006; however, the Debtor

did not make any attempts to amend until after the Plaintiffs raised the issues in this adversary

proceeding.  Furthermore, filing an amendment nearly one year after the petition was filed does not

excuse the Debtor's initial failure to disclose the transfer.

Additionally, the Debtor gave no explanation for his failure to disclose the Alpine Drive

Property refinance on January 31, 2005, and the receipt of $44,799.55 which was then paid to trade

creditors, in his statements and schedules.  In connection with this transaction, The Community Bank

of East Tennessee obtained a deed of trust dated January 31, 2005, as security for the Note.  *See*

TRIAL EX. 5.  The creation of a lien through the deed of trust on the Alpine Drive Property

constituted a transfer of the Debtor's interest in the property, *see Hendon v. Gen. Motors Acceptance*

*Corp. (In re B & B Utils., Inc.)*, 208 B.R. 417, 421 (Bankr. E.D. Tenn. 1997), which he was required

20

to disclose in his Statement of Financial Affairs. Nevertheless, the Debtor did not, nor did he advise the Chapter 7 Trustee of this refinance at any time prior to his disclosure of it in his June 2006 deposition taken by the Plaintiffs in connection with this adversary proceeding. The Debtor has still not properly disclosed this transaction in his statements and schedules, as it was not included in his Amended Statement of Financial Affairs.

Further, with respect to the transfer of the Firebird to Clowers Electric, the Debtor states that he did not think to disclose this transaction because no money changed hands. In fact, the first time that the Debtor mentioned the transfer was in his June 2006 deposition taken in connection with this adversary proceeding. The Debtor also argues that he has amended his statements and schedules to reflect the transfer, which did, in fact, occur on July 21, 2006. Nevertheless, as with the Debtor's failure to disclose the transfer of the Alpine Drive Property via quit claim to his wife, the Debtor's testimony is not credible. In his initial Statement of Financial Affairs, the Debtor listed the transfer of a 1999 Chevy Silverado in April 2005, under question 10, entitled "Other transfers." The question does not request the amount of money received, it asks for the "value received." It is implausible that the Debtor, who is a businessman, would understand that he should list the transfer of one vehicle but not another, despite the fact that no money changed hands. It is also telling that the Debtor did not disclose this transfer at any time prior to his June 2006 deposition taken in association with this adversary proceeding, and he made no move to notify the Chapter 7 Trustee or amend his statements and schedules until just under one year after the date upon which he initially filed.

Finally, with respect to the $1,649.72 payment to CitiCapital made via bank transfer, the Debtor testified that when he made that payment, he knew that he was going to be filing for

21

bankruptcy, but he intended to reaffirm the debt and retain possession of CitiCapital's collateral, a 2003 Bobcat loader.  He also testified that he disclosed making monthly payments to Ingersoll Rand in his Statement of Financial Affairs, and although they were listed as separate monthly payments of $528.94, they were all included within the $1,649.72 payment, which also includes penalties.  The Debtor's testimony is plausible; however, the fact remains that the Debtor's Statement of Financial Affairs, signed under penalty of perjury, states that the Debtor made payments of $528.94 to Ingersoll Rand in May 2005, June 2005, and July 2005, for total payments of $1,586.82, when, in fact, the Debtor made one lump sum payment to CitiCapital, on July 14, 2006, in the amount of $1,649.72.  Furthermore, when the Debtor amended his Statement of Financial Affairs, he did not make any changes to reflect this discrepancy.  Alone, perhaps this inconsistency would not be sufficient to constitute reckless indifference; however, in light of the other inconsistencies and non-disclosures, this misstatement weighs against the Debtor as well.

Taken together, the foregoing omissions and misstatements are significant enough to evidence the Debtor's intent to deceive or, at the very least, his reckless indifference to the veracity of his statements.  His testimony that he was not aware that he should disclose the transfers of the Alpine Drive Property and the Firebird is not credible, especially in light of the fact that the Debtor built and sold houses in his business.  Additionally, although the Debtor amended his statements and schedules to "cure" his deficiencies and misstatements, the amendments were not particularly forthcoming, as his Amended Schedule A was filed more than two months following his first meeting of creditors, and the Amended Statement of Financial Affairs was not filed for almost a year after he filed the bankruptcy case.  Furthermore, the Amended Statement of Financial Affairs still

does not contain any mention of the Alpine Drive Property refinance or the $1,649.72 lump sum payment made to CitiCapital. Accordingly, based upon the evidence presented, the Plaintiffs have met their burden of proof that the Debtor knowingly and fraudulently filed statements and schedules containing false information, and his discharge will be denied pursuant to § 727(a)(4).

### D

The Plaintiffs also object to the Debtor's discharge under § 727(a)(4)(D) for failing to turnover books and financial documents to the Chapter 7 Trustee. Section 727(a)(4)(D) enforces a debtor's affirmative duties to surrender all property and documents associated therewith to the Chapter 7 trustee "by denying discharge to debtors who intentionally withhold records, books, documents, or other papers relating to their property or financial affairs." *Pereira v. Young (In re Young)*, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006) (citation omitted).

> The party objecting to discharge under § 727(a)(4)(D) has the initial burden of proving that:  1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; 2) was in connection with a case; 3) was withheld from an officer of the estate entitled to possession; 4) was done knowingly and fraudulently; and 5) relates to the debtor's property or financial affairs.

*Olsen v. Slocombe (In re Slocombe)*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).

With respect to their request for denial of the Debtor's discharge under § 727(a)(4)(D), the Plaintiffs aver that the Debtor has not produced all financial records concerning the Alpine Drive Property refinance, that the Debtor refused for several months to provide the Chapter 7 Trustee with the names of his parents, who reside at the Black Oak Property, and that the Debtor failed to provide the Chapter 7 Trustee with information concerning the checks totaling $15,069.00 that were written

23

to Mrs. Courtney out of the Debtor's business account.  At trial, the Debtor testified that he has produced all documentation requested by the Chapter 7 Trustee.  During his testimony, Mr. Walls confirmed that the Debtor has provided him with all documents that have been requested, albeit, some of the information was not particularly timely provided.  Nonetheless, based upon the evidence presented, the court finds that the Plaintiffs have not met their burden of proof that the Debtor knowingly and fraudulently withheld documents from the Chapter 7 Trustee.

### E

Finally, the Plaintiffs object to the Debtor's discharge under § 727(a)(5), alleging that he has not adequately explained a loss or deficiency of assets.  The court has "broad power [under § 727(a)(5)] to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets."  *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996).  The initial burden is on the Plaintiffs to establish the loss or deficiency of assets by demonstrating that (1) at a time not too remote from the bankruptcy, the Debtor owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Debtor no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question.  *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D. Ky. 1999).  The Plaintiffs are not required to prove that the Debtor acted knowingly or fraudulently, as "noticeably lacking from § 727(a)(5) is any element of wrongful intent

24

or, for that matter, any affirmative defenses – § 727(a)(5) simply imposes strict liability." *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).[5]

The burden then shifts to the Debtor to provide a satisfactory explanation of the whereabouts of the assets. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984). "[A] satisfactory explanation 'must consist of more than . . . vague, indefinite, and uncorroborated' assertions by the debtor," *D'Agnese*, 86 F.3d at 734 (quoting *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir. 1966)), and it must be reasonable and credible, such that the court is convinced that the debtor is acting in good faith. *Fed. Deposit Ins. Corp. v. Hendren (In re Hendren)*, 51 B.R. 781, 788 (Bankr. E.D. Tenn. 1985). Furthermore, the explanation must be supported by "at least some documentation . . . [that is] sufficient to 'eliminate the need for the Court to speculate as to what happened to all the assets.'" *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 364-65 (Bankr. N.D. Ill. 2002) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 956 (Bankr. N.D. Ill. 1995)); *see also NAFCO Fed. Credit Union v. Lawson (In re Lawson)*, 308 B.R. 417, 426 (Bankr. D. Neb. 2004) ("The explanation should be sufficient so the court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation.").

The Plaintiffs contend that the Debtor's discharge should be denied under § 727(a)(5) because he has failed to offer any explanation with respect to the money he paid to himself and/or

---

[5] "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several Code provisions meant to 'relieve[] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor.'" *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004) (quoting *First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson),* 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002)).

his wife totaling $23,489.00, as well as the $44,799.55 they received from the pre-petition refinance

of the Alpine Drive Property.  The Plaintiffs bear the initial burden of demonstrating that the Debtor

owned identifiable assets at a time not too remote from the bankruptcy, but that when he filed, he

no longer owned those assets, and he has not offered an adequate explanation for the disposition of

those assets. *See Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D. Ky. 1999).

They met this burden, and it shifted to the Debtor to adequately explain the disposition thereof.

Based upon the evidence presented, and as previously discussed, the court finds that the

Debtor has sufficiently explained that the $23,489.00 paid to himself and Mrs. Courtney out of his

business account was primarily used to pay household expenses, including their house payment and

other routine expenses.   Additionally, Mr. Walls confirmed that, through his review of the

Courtneys' personal bank records against the Debtor's business account records, most of the funds

were accounted for therein.  Although Mrs. Courtney testified that she did not deposit all of the

checks, her explanation that she cashed some for groceries and gasoline was credible.  Likewise, the

Debtor has sufficiently explained the disposition of the $44,799.55 received from the refinance of

the Alpine Drive Property.  His testimony that he used the proceeds to pay trade creditors to avoid

the possibility of materialman's liens against his residence was not refuted and is credible.

### III

In summary, the court finds that the Debtor transferred property, pre-petition, with an intent

to hinder, delay, or defraud his creditors and that the Debtor, fraudulent intent or reckless

indifference, made false oaths in the form of misstatements and glaring omissions in his statements

26

and schedules.  Based upon these findings, the court holds that the Debtor's discharge is denied

pursuant to 11 U.S.C.A. § 727(a)(2)(A) and (4)(A).[6]


      A judgment consistent with this Memorandum will be entered.


FILED:  September 26, 2006

                  BY THE COURT

                  */s/  RICHARD STAIR, JR.*

                  RICHARD STAIR, JR.
                  UNITED STATES BANKRUPTCY JUDGE

---

[6] Because the Debtor is denied his discharge, the Plaintiffs' request for a nondischargeable judgment under § 523(a)(2)(A), (4), and/or (6) is not necessary.  *See supra* n.2.